UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

JAMES SLONE, JR.,                          )
                                           )
                Plaintiff,                 )
                                           )
v.                                         )        No.        3:17-cv-133-DCP
                                           )
NANCY A. BERRYHILL,                        )
Acting Commissioner of Social Security,    )
                                           )
                Defendant.                 )

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal

Rules of Civil Procedure, and the consent of the parties [Doc. 15].  Now before the Court is

Plaintiff's Motion for Judgment on the Pleadings and Memorandum in Support [Docs. 16 & 17]

and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 18 & 19].

James Slone, Jr. ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge

("the ALJ"), the final decision of Defendant Nancy A. Berryhill ("the Commissioner").  For the

reasons that follow, the Court will **DENY** Plaintiff's motion and **GRANT** the Commissioner's

motion.

## I.    PROCEDURAL HISTORY

On April 17, 2012, Plaintiff filed an application for disability insurance benefits and

supplemental security income benefits pursuant to Title II and XVI of the Social Security Act, 42

U.S.C. §§ 401 *et seq.*, and 1381 *et seq.*, claiming a period of disability that began on February 13,

2012.  [Tr. 18, 211–44].  After his application was denied initially and upon reconsideration,

Plaintiff requested a hearing before an ALJ.  [Tr. 131–32].  A hearing was held on August 4, 2014.

[Tr. 37–63].  On September 11, 2014, ALJ Jim Beeby found that Plaintiff was not disabled.  [Tr.

94–109]. The Appeals Council remanded the case on August 5, 2015. [Tr. 114–19]. A second hearing was conducted on January 28, 2017, by ALJ Keith Pilkey. [Tr. 64–86]. ALJ Pilkey thereafter rendered an unfavorable decision on February 5, 2016, finding that Plaintiff was not disabled. [Tr. 15–31]. The Appeals Council denied Plaintiff's Request for Review on February 28, 2017 [Tr. 1–6], making the ALJ's decision the final decision of the Commissioner.

Having exhausted his administrative remedies, Plaintiff filed a Complaint with this Court on April 7, 2017, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II.    ALJ FINDINGS

The ALJ made the following findings:

> 1.  The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.
>
> 2.  The claimant has not engaged in substantial gainful activity since February 13, 2012, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairments:  osteoarthritis of the knees, a back disorder, hearing loss, Generalized Anxiety, and Depressive Disorder (20 CFR 404.1520(c) and 416.920(c)).
>
> 4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that he is able to lift and carry 20 pounds occasionally and ten pounds frequently; stand/walk for no more than a total of two hours in an eight-hour day; no climbing ladders, ropes,

scaffolds, ramps, or stairs; no crawling; occasional balancing, kneeling, crouching, and stooping; no concentrated exposure to vibration or hazards; and no exposure to loud noise. The claimant is able to maintain concentration and persistence for two hours in the performance of simple tasks in a work setting that requires no more than occasional interaction with the public.

6. The claimant is unable to perform any past relevant work. (20 CFR 404.1565 and 416.965).

7. The claimant was born on January 28, 1967, and was 45 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from February 13, 2012, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[Tr. 20–30].

## III.   STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*,

581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).

## IV.    DISABILITY ELIGIBILITY

"Disability" means an individual cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will only be considered disabled:

> if his physical or mental impairment or impairments are of such
> severity that he is not only unable to do his previous work but
> cannot, considering his age, education, and work experience, engage

4

in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

§§ 423(d)(2)(A) and 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1.  If claimant is doing substantial gainful activity, he is not disabled.

2.  If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3.  If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4.  If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5.  Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in your case record." 20 C.F.R. §§ 404.1520(a)(4) and -(e), 416.920(a)(4), -(e). An RFC is the most a claimant can do despite his limitations. §§ 404.1545(a)(1) and 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137,

146 (1987)).

## V.    ANALYSIS

Plaintiff asserts four allegations of error committed by the ALJ. First, Plaintiff argues that the hypothetical question presented to the Vocational Expert ("VE") was flawed because it did not include language about having to miss work on a regular basis. [Doc. 17 p. 9–11]. In that regard, Plaintiff claims that the ALJ failed to properly weigh the opinions of Ms. Amanda Martin, Plaintiff's nurse practitioner, and Dr. Robert Spangler, a consulting psychologist, regarding Plaintiff's work attendance. [*Id.* at 10–11]. Next, Plaintiff maintains that the ALJ failed to properly follow the remand order from the Appeals Council, particularly in not providing specific rationales for Plaintiff's assessed limitations. [*Id.* at 11]. Plaintiff also argues that the ALJ erred in concluding that a cane was not medically necessary in evaluating his ability to work pursuant to Social Security Ruling 96-9p. [*Id.* at 11–12]. Lastly, Plaintiff submits that the ALJ erred in assessing the credibility of Plaintiff's subjective allegations. [*Id.* at 12–13]. The Court will address each allegation of error in turn.

### A.    Absenteeism

#### 1.    Hypothetical Question Presented to Vocational Expert

First, Plaintiff claims that the ALJ's finding at step five that Plaintiff can perform other work which exists in the national economy is not supported by substantial evidence because it "doesn't include all of the uncontradicted limitations . . . contained in the record." [Doc. 17 p. 9]. Plaintiff submits that the hypothetical questions submitted to the VE were flawed because the questions did not include language regarding Plaintiff having to miss work on a regular basis. [*Id.* at 10]. Likewise, Plaintiff asserts that the ALJ failed to provide sufficient weight, or a sufficient explanation for the weight accorded to, the opinions of Ms. Martin, Plaintiff's nurse practitioner,

and Dr. Spangler, a consulting psychologist, who both opined that Plaintiff would possibly have to miss work on a regular basis. [*Id.* at 10].

The Commissioner asserts that substantial evidence supports the ALJ's RFC determination, as the ALJ "properly evaluated the medical opinions in conjunction with the other relevant evidence in assessing the RFC." [Doc. 19 p. 4]. Therefore, the Commissioner states that having properly formulated Plaintiff's RFC, "which contained all of Plaintiff's credible limitations from his impairments," the VE's response to the ALJ's hypothetical question constitutes substantial evidence for finding that Plaintiff was not disabled because he could perform other work within the national economy. [*Id.* at 13].

At step five, the Commissioner has the burden of proving that other work exists in the national economy that the claimant can perform given the claimant's RFC and vocational factors, including age, education, and work skills. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). In many cases, the Commissioner may meet her burden by applying the applicable Medical-Vocational Guideline rule, which based upon the claimant's age, education, and whether claimant has transferable job skills, will indicate a finding of "disabled" or "not disabled." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004) (citing *Wright v. Massanari*, 321 F.3d 611, 615 (6th Cir. 2003); *Burton v. Sec'y of Health & Human Servs.*, 893 F.2d 821, 822 (6th Cir. 1990)). Essentially, the grids allow an ALJ to take administrative notice that jobs are available in the national economy in which a claimant is capable of performing without having to consult additional evidence. *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 529 (6th Cir. 1981).

However, if a claimant suffers from non-exertional limitations or cannot perform substantially all of the exertional demands of a job at a given exertional level, as is the case here

[Tr. 30], the grids only provide a framework for the Commissioner's decision, and the Commissioner must utilize other evidence, such as testimony from a vocational expert, to determine whether work exists in the national economy that the claimant can perform given his/her RFC. *Wilson*, 378 F.3d at 548 (citing *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 537–38 (6th Cir. 2001); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996)).

Plaintiff submits that the hypothetical questions posed to the VE were flawed because the questions did not include "uncontradicted limitations" regarding being absent from work, which Plaintiff claims are supported by the opinions of Dr. Spangler and Ms. Martin. [Doc. 17 p. 10]. During the administrative hearing, the ALJ posed a hypothetical question to the VE which included the exact limitations that make up Plaintiff's RFC. [*Compare* Tr. 23 *with* Tr. 82–83]. The VE responded with a representative list of jobs that a person under this hypothetical would be capable of performing, including an address clerk, a surveillance system monitor, and a stuffer. [Tr. 83]. Then, the ALJ asked the VE another hypothetical question with the same physical limitations but altered the mental limitations to add that the individual would miss more than four days per month of work. [Tr. 84]. The VE responded that there would be no jobs for an individual with the increased absenteeism. [*Id.*].

Although Plaintiff argues that the ALJ's finding is not supported by substantial evidence because it does not include the alleged uncontradicted limitation of absenteeism, the ALJ is only required to incorporate in his hypothetical questions the limitations that he finds credible and supported by the record. *See Winslow v. Comm'r of Soc. Sec.*, 566 F. App'x 418, 421 (6th Cir. 2014) ("The record reflects, however, that the hypothetical questions were proper because the ALJ incorporated all of the functional limitations that she deemed credible."). Here, the ALJ asked the VE a hypothetical question which directly incorporated the exact limitations in Plaintiff's RFC.

[Tr. 82–83].  While Plaintiff complains that the "hypothetical utilized by the [ALJ] did not include the Plaintiff having to miss work on a regular basis," at the same time, Plaintiff acknowledges that the ALJ posed multiple hypotheticals to the VE, one of which included an assumption of absenteeism involving missing more than four days of work per month.  [Doc. 17 p. 10]; *see* [Tr. 84].    The  ALJ  or  Plaintiff's  counsel  may  question  the  vocational  expert  with a hypothetical question containing a possible RFC that was not adopted.  *See Crum v. Comm'r of Soc. Sec.*, 660 F. App'x 449, 457 (6th Cir. 2016) ("[U]se of a treating physician's opinion in a hypothetical by no means establishes that the ALJ accepted the treating physician's opinion, much less gave it controlling weight.  Allowing the ALJ to ask questions to reach an informed conclusion should be encouraged, not used against the ALJ on appeal."); *Reed v. Berryhill*, No. 3:16-cv-822, 2018 WL 558824, at *2 (M.D. Tenn. Jan. 25, 2018) (holding "argument [relating to absenteeism] relies on a limitation that was not found by the ALJ . . . [and] [t]he vocational expert's response to a hypothetical question that is not based on the residual functional capacity is of no consequence").  Ultimately, the ALJ's hypothetical question incorporating Plaintiff's RFC assumed only those limitations which the ALJ found were consistent with the record, and that finding is supported by substantial evidence.

### 2.      Weight Given to Opinions of Ms. Martin and Dr. Spangler

Plaintiff's complaint further challenges the ALJ's RFC determination, claiming the VE "was not asked to assume all of the limitations that the Plaintiff has by uncontradicted evidence." [Doc. 17 p. 10].    Specifically, Plaintiff states that the ALJ "pointed to no evidence which contradicted [the] opinions" of Ms. Martin and Dr. Spangler, and that the ALJ failed to properly weigh the opinion of Ms. Martin.  [*Id.* at 10–11].

### a. Consulting Psychologist, Dr. Robert Spangler, Ph.D.

Plaintiff argues that the ALJ should have accepted the opinion of the consulting psychologist, Dr. Spangler, regarding his expected rate of absenteeism. The ALJ discussed the opinion of Dr. Spangler, who performed a one-time consultative exam on December 15, 2012. [Tr. 496]. Dr. Spangler diagnosed Plaintiff with Depressive Disorder NOS, mild, as well as stated that Plaintiff had high borderline to low average intelligence, and limited education and academic skills. [Tr. 498]. Further, Dr. Spangler discussed Plaintiff's impairments, including a history of a hearing disorder, dental problems, low back pain, a right elbow injury with bursitis, chronic chest pain, joint pain, migraines, and osteoarthritis in both knees with chronic pain. [*Id.*]. The ALJ also detailed Plaintiff's response to several mental assessments reported in Dr. Spangler's opinion, such as that Plaintiff was able to repeat two words after five minutes, as well as could repeat seven numbers presented serially forward and five numbers presented backwards, but "was unable to do serial seven's or three's counting task." [Tr. 26]. Ultimately, Dr. Spangler assessed no significant limitations in Plaintiff's ability to sustain concentration, ability to adapt, and persistence, but deemed Plaintiff's social interaction limited due to his depressive disorder. [Tr. 499]. Lastly, Dr. Spangler opined that Plaintiff's attendance in the workplace would probably not be adequate. [*Id.*].

In considering non-treating physician opinions, such as Dr. Spangler, an ALJ is "not bound by any findings made by State agency medical or psychological consultants, or other program physicians or psychologists," but the ALJ must "consider findings of State agency medical and psychological consultants or other program physician, psychologists, and other medical specialists as opinion evidence[.]" 20 C.F.R. § 404.1527(e)(2)(i). An ALJ is required to consider every medical opinion of record, 20 C.F.R. § 404.1527, but because Dr. Spangler is not a treating physician, the ALJ is not required to defer to his opinion. Instead, "in weighing a consultative

10

examiner's opinion, an Administrative Law Judge must evaluate the factors listed in 20 C.F.R. § 404.1527(c)." *Williams v. Colvin*, No. 4:15CV-00082-HBB, 2016 WL 797594, at *4 (W.D. Ky. Feb. 26, 2016). Those factors are: (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) supportability of the opinion; (4) consistency of the opinion with the record as a whole; (5) specialization of the treating source; and (6) other factors. 20 C.F.R. § 404.1527(c)(2)-(6). However, there is no rule that requires an articulation of each of these factors. *Albaugh v. Comm'r of Soc. Sec.*, No. 14-CV-10963, 2015 WL 1120316, at *6 (E.D. Mich. Mar. 11, 2015).

Here, in the disability determination, the ALJ discussed Dr. Spangler's examination findings and conclusions at length [Tr. 26, 29], and ultimately afforded his opinion little weight because it "is vaguely worded . . . [and] not clearly supported by the evidence." [Tr. 29]. The ALJ concluded that "[t]he opinion of Dr. Spangler indicates unspecified limitations with regard to understanding and remembering and social functioning," but also stated "Dr. Spangler did not offer any rationale or explanation for his opinion that the claimant would probably be unable to maintain adequate work attendance." [*Id.*].

The Court finds that substantial evidence supports the ALJ's conclusion that Dr. Spangler's opinion was entitled to little weight, specifically with respect to Dr. Spangler's opinion that Plaintiff would be unable to maintain adequate work attendance. No explanation exists in Dr. Spangler's evaluation notes to provide support for his contention regarding Plaintiff's inability to maintain regular work attendance. *See, e.g.*, *Hight v. Comm'r of Soc. Sec.*, No. 1:08-CV-1062, 2010 WL 889939, at *7 (W.D. Mich. Mar. 10, 2010) ("[T]he consulting psychologist's unexplained estimate of how often a claimant who was not working would likely be absent from

work if she had a job, was his subjective opinion rather than a medical opinion. It was not entitled to any particular weight.").

The opinion of a consulting physician is not entitled to the deference of the opinion of a treating physician. *Barker v. Shalala,* 40 F.3d 789, 794 (6th Cir. 1994). Additionally, the ALJ may reject the uncontradicted opinion of a consulting physician based upon the ALJ's interpretation of the findings and lay evidence. *See Crisp v. Sec'y of Health & Human Servs.,* 790 F.2d 450, 452 (6th Cir. 1986). In his findings, the ALJ detailed how Dr. Spangler noted that Plaintiff was socially confident, understood instructions and demonstrated good concentration; and although Plaintiff was depressed, he was cooperative and emotionally stable on the day of the evaluation. [Tr. 26, 496–98]. Elsewhere in the disability determination, the ALJ stated that the medical record failed to document impairments which would result in severe or disabling pain, Plaintiff failed to follow through with recommended Synvisc injections for his knee, no treating source has limited his activities, and that Plaintiff is not receiving professional mental health treatment. [Tr. 28].

Ultimately, the ALJ thoroughly evaluated Dr. Spangler's opinion with the medical record as a whole and found that Dr. Spangler failed to provide a justification for his statement regarding possible absenteeism. Therefore, the ALJ's decision to assign little weight to Dr. Spangler's consultative opinion is supported by substantial evidence.

### b. Nurse Practitioner, Ms. Amanda Martin, FNP-C

Plaintiff also claims that the ALJ failed to properly weigh the opinion of Ms. Martin, as her opinion regarding absenteeism was supported by the opinion of Dr. Spangler. [Doc. 17 p. 10]. Plaintiff first began monthly visits with Ms. Martin, a family nurse practitioner at Harrogate Family Health Care, on April 19, 2012, for treatment of chronic joint pain, specifically in his knees

and back. [Tr. 405–44]. On May 11, 2015, Ms. Martin completed a "Medical Opinion Re: Ability to Do Work-Related Activities (Mental)" wherein she analyzed Plaintiff's mental abilities and aptitudes. [Tr. 619–20].[1] First, Ms. Martin examined Plaintiff's capacity to perform unskilled work, and opined that Plaintiff was limited, but could satisfactorily understand, remember, and carry out very short and simple instructions, as well as ask simple questions or request assistance. [Tr. 619]. Additionally, Ms. Martin noted that Plaintiff was seriously limited, but not precluded from, remembering work-like procedures, maintaining attention for a two-hour segment, maintaining regular attendance and being punctual within customary, usually strict tolerances, sustaining an ordinary routine without special supervision, and responding appropriately to changes in a routine work setting. [*Id.*].

Ms. Martin also opined that Plaintiff was unable to meet competitive standards required to work in coordination with or in proximity to others without being unduly distracted, make simple work-related decisions, complete a normal workday and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, and deal with normal work stress, be aware of normal hazards and take appropriate precautions. [*Id.*].

---

[1] Ms. Martin also completed a questionnaire on May 11, 2015 regarding Plaintiff's ability to lift/carry and stand/walk. [Tr. 631–32]. However, Ms. Martin wrote that her office did not perform functional capacity exams, and solely stated that Plaintiff's lifting/carrying, and standing/walking was affected by his impairment, while Plaintiff's ability to sit was not affected. [*Id.*]. The ALJ assigned little weight to this questionnaire, as Ms. Martin's "office notes are totally void of any clinical findings, and the opinion "is not supported by objective evidence." [Tr. 28].

Then, Ms. Martin analyzed Plaintiff's mental abilities and aptitudes needed to do semiskilled and skilled work, opining that Plaintiff was unable to meet competitive standards required to understand and remember detailed instructions, carry out detailed instructions, set realistic goals or make plans independently of others, and deal with stress of semiskilled and skilled work. [*Id.*]. Lastly, Ms. Martin opined that Plaintiff's impairment or treatment would cause him to be absent from work more than four days per month. [Tr. 620].

In claiming that the ALJ failed to properly evaluate Ms. Martin's opinion, Plaintiff mistakenly cites to Social Security Ruling 96-3p, rather than Social Security Ruling 06-03p— which governs the opinions of "not acceptable medical sources." Soc. Sec. Rul. 06–03, 2006 WL 2329939, at *2 (Aug. 9, 2006). Under the regulations, a "treating source" includes physicians, psychologists, or "other acceptable medical source[s]" who provide, or have provided, medical treatment or evaluation and who have, or have had, an ongoing treatment relationship with the claimant. 20 C.F.R. §§ 404.1502; 416.902. Evidence from those who are "not acceptable medical sources" or "other sources," including nurse practitioners, "are important and should be evaluated with key issues such as impairment severity and functional effects, along with other relevant evidence in the file." Soc. Sec. Rul. 06–03, 2006 WL 2329939, at *2 (Aug. 9, 2006); *see McNamara v. Comm'r of Soc. Sec.*, 623 F. App'x 308, 309 (6th Cir. 2015) ("A nurse practitioner is not an 'acceptable medical source' under the applicable regulations, but rather falls into the category of "other sources.") (citing 20 C.F.R. § 416.913(d)(1)).

The Court finds that as an "other source," Ms. Martin's opinion is not subject to any special degree of deference. *See Meuzelaar v. Comm'r of Soc. Sec.*, 648 F. App'x 582, 584 (6th Cir. 2016) (holding that "the opinion of a nurse or a nurse practitioner—is entitled to less weight than a physician's opinion because a nurse is not an 'acceptable medical source'"). Interpreting Social

Security Ruling 06-03p, the Sixth Circuit found that "[o]pinions from non–medical sources who have seen the [Plaintiff] in their professional capacity should be evaluated by using the applicable factors, including how long the source has known the individual, how consistent the opinion is with other evidence, and how well the source explains the opinion." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007). An ALJ has "broad discretion" when evaluating an "other source" opinion. *Brown v. Comm'r of Soc. Sec.*, 591 F. App'x 449, 451 (6th Cir. 2015).

Plaintiff correctly states that the ALJ failed to specifically designate what weight was given to Ms. Martin's May 11, 2015 mental medical opinion. Social Security Ruling 06-03 provides guidance in regard to how an ALJ should explain the ALJ's consideration of "other source" evidence. 2006 WL 2329939, at *3. Of particular significance, the Ruling carefully points out that "there is a distinction between what an adjudicator must consider and what the adjudicator must explain." *Id.* at *6. The ALJ "generally *should* explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." *Id.* (emphasis added).

A review of other Social Security disability cases reveals that substantial evidence supports an ALJ's RFC determination when, although an ALJ may have failed to assign a specific weight to a nurse practitioner's opinion, the ALJ discussed it or provided reasons for discounting the opinion. *See Mullins v. Colvin*, No. 3:14-cv-01757, 2015 WL 1472017, at *8 (N.D. Ohio Mar. 31, 2015) (finding substantial evidence supported the ALJ's determination despite the fact that the ALJ failed to acknowledge the nurse practitioner's opinion, as the Court was "satisfied that the ALJ at least considered the relevant evidence"); *Mitchell v. Comm'r of Soc. Sec.*, No. 13-10178, 2014 WL 1230036, at *7 (E.D. Mich. Mar. 25, 2014) (finding substantial evidence supported the

ALJ's determination despite not assigning specific weight to a nurse practitioner's opinion, because the ALJ discussed the opinion); *cf. Dixon v. Colvin*, No. 4:15-269-DCR, 2016 WL 3661262, at *5 (E.D. Ky. July 5, 2016) (distinguishing from *Mullins* and *Mitchell* because the ALJ "failed to discuss [the] nurse practitioner['s] . . . opinion and findings"); *Smith v. Colvin*, No. 3:14-cv-363, 2016 WL 3775583, at *9 (E.D. Tenn. June 22, 2016) ("The ALJ, however, did not explain whether, or how, [the nurse practitioner's opinion] factored into the disability determination, and the ALJ did not assign the opinion any particular weight."), *report and recommendation adopted*, 2016 WL 3822516 (E.D. Tenn. July 13, 2016).

Here, although the ALJ failed to assign a specific weight to Ms. Martin's opinion relating to absenteeism, he provided "some basis" for why he was rejecting the opinion. *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007). In the disability determination, the ALJ first detailed that Ms. Martin completed a medical opinion assessing Plaintiff's competitive standards in work related activities and noted that Ms. Martin indicated that Plaintiff would be expected to be absent from work more than four days per month. [Tr. 25]. Then, the ALJ stated that this opinion regarding Plaintiff's ability to perform mental work-related tasks was "overly restrictive in light of the overall record," as Ms. Martin's "office notes fail to reflect any mental status findings." [Tr. 29]. Additionally, the ALJ found that "[h]er opinion is inconsistent with other medical evidence, the longitudinal record, and the claimant's adaptive functioning." [*Id.*].

This District has previously stated that Sixth Circuit case law "appears to interpret the phrase 'should explain' [in Social Security Ruling 06–03] as indicative of strongly suggesting that the ALJ explain the weight, as opposed to leaving the decision whether to explain to the ALJ's discretion." *Hatfield v. Astrue*, No. 3:07-CV-242, 2008 WL 2437673, at *3 (E.D. Tenn. June 13, 2008) (citing *Cruse*, 502 F.3d at 541–42); *see, e.g.*, *Smith*, 2016 WL 3775583, at *9. In *Wilson v.*

*Colvin*, the Court concluded that the ALJ's failure to address a nurse practitioner's opinion was not harmless because the court could "neither substitute its own reasoning nor the Commissioner's proposed arguments for [the] omission." No. 3:13-CV-84-TAV-CCS, 2014 WL 619713, at *6 (E.D. Tenn. Feb. 18, 2014). In the present case, however, the ALJ discussed Ms. Martin's opinion directly after discrediting Dr. Spangler's opinion related to absenteeism. [Tr. 29]. Further, the ALJ stated that Ms. Martin's opinion was inconsistent with other evidence and not supported by the record. [Tr. 29]. Therefore, the present case is distinguishable because the ALJ provided sufficient rationale for finding that Ms. Martin's opinion was "overly restrictive in light of the overall record." [*Id.*].

Moreover, the Court finds that the ALJ's explanation for rejecting Ms. Martin's opinion concerning absenteeism is supported by substantial evidence. First, although Plaintiff claims that Ms. Martin's opinion is entitled to greater deference because it is consistent with Dr. Spangler's opinion and both opinions are uncontradicted, as the Court previously discussed, the ALJ found that Dr. Spangler did not provide any explanation for his opinion that Plaintiff would be unable to maintain adequate work attendance. Given that the ALJ properly discredited Dr. Spangler's opinion, Ms. Martin's opinion is therefore not entitled to greater weight simply because Plaintiff claims that it is supported by Dr. Spangler's opinion.

Second, the ALJ's lengthy evaluation of the medical record through examining Plaintiff's medical records at Cherokee Health Systems, Dr. Spangler's opinion, the opinion of consultative examiner Dr. Robert Blaine, as well as Ms. Martin's opinion, provides substantial evidence to support his finding that Ms. Martin's opinion was overly restrictive. The ALJ's discussion of the medical evidence implicitly rejects Ms. Martin's opinion concerning absenteeism. *See, e.g.*, *Flynn v. Comm'r of Soc. Sec.*, No. 1:17-CV-1818, 2018 WL 376721, at *9 (N.D. Ohio July 23, 2018)

17

(describing a form filled out by a nurse practitioner as checking a box for an estimate, and noting "[t]he ALJ implicitly rejected such a severe limitation by demonstrating the above listed medical evidence of record fails to support such an estimate"), *report and recommendation adopted*, 2018 WL 3752264 (N.D. Ohio Aug. 8, 2018).

Next, by discussing the medical records related to Plaintiff's mental impairments, the ALJ allowed the Court to follow his reasoning for discrediting Ms. Martin's opinion, as stated in Social Security Ruling 06-03. 2006 WL 2329939, at *6. The ALJ noted that Plaintiff was seen on May 29, 2014, by Dr. Brenda Karns, and a "mental status examination revealed a normal appearance, an uncooperative/passive attitude, calm motor activity, normal speech, depressed mood, restricted affect, normal thought processes, and normal content." [Tr. 25]. Additionally, the ALJ extensively reviewed Plaintiff's psychological consultative examination with Dr. Spangler, as the Court previously discussed. [Tr. 26]. The ALJ's RFC determination incorporated mental limitations that Plaintiff was "able to maintain concentration and persistence for two hours in the performance of simple tasks in a work setting that requires no more than occasional interaction with the public." [Tr. 23]. Accordingly, the ALJ found that "[g]reater work-related mental limitations are not supported by credible evidence." [Tr. 29].

Ultimately, the Court finds that substantial evidence supports the ALJ's RFC determination and treatment given to the opinions of Ms. Martin and Dr. Spangler. Having properly formulated the RFC, which contained all of Plaintiff's credible limitations from his impairments, the ALJ presented the VE with a hypothetical question that identified an individual of Plaintiff's age, education, and work experience, who had limitations identical to the credible limitations included in Plaintiff's RFC. Therefore, Plaintiff's arguments to the contrary are not well taken.

## B. Appeals Council's Remand Order

Plaintiff also claims that the ALJ failed to properly follow the Appeals Council's order to make detailed factual findings regarding Plaintiff's RFC with appropriate citations to the record. [Doc. 17 p. 11]. The Appeals Council initially remanded Plaintiff's case, as the previous ALJ found that Plaintiff's depression constituted a severe mental impairment but did not reflect an adequate evaluation of its severity or effects pursuant to 20 C.F.R. §§ 404.1520a and 416.920a. [Tr. 116]. Additionally, the Appeals Council held that although Plaintiff's depression was found to be a severe mental impairment, which resulted in moderate difficulties in social functioning, concentration, persistence, and pace, the RFC assessment did not contain sufficient corresponding mental limitations. [Tr. 116–17]. On remand, the Appeals Council instructed the ALJ to further evaluate, in pertinent part, Plaintiff's mental impairments under 20 C.F.R. §§ 404.1520a and 416.920a, "documenting application of the technique in the decision by providing specific findings and appropriate rationale for each of the functional areas described in 20 C.F.R. 404.1520a(c) and 416.920a(c)," as well as Plaintiff's maximum FRC during the entire period at issue. [Tr. 117].

There is "disagreement amongst federal courts as to whether an ALJ's failure to follow the Appeals Council instructions may serve as an independent ground for reversal." *Kearney v. Colvin*, 14 F. Supp. 3d 943, 950 (S.D. Ohio 2014) (collecting cases). The Sixth Circuit does not appear to have had the opportunity to address this question, and District Courts within the Sixth Circuit have disagreed on the issue. *Id.*; *see Shope v. Comm'r of Soc. Sec.*, 2015 WL 3823165 at * 8 (S.D. Ohio June 19, 2015) ("The overwhelming majority of courts in this circuit, however, have determined that federal courts lack jurisdiction to consider whether an administrative law judge complied with the Appeals Council's instructions on remand."), *report and recommendation adopted*, 2015 WL 6155919 (S.D. Ohio Oct. 20, 2015).

However, this District has previously held that an ALJ's failure to follow the dictates of the Appeals Council's instructions constitutes an error requiring remand. *See Salvati v. Astrue*, No. 3:08-cv-494, 2010 WL 546490, at *4–5 (E.D. Tenn. Feb. 10, 2010) (addressing an identical instruction as in the present case). In *Salvati*, the Court detailed the process for the evaluation of mental impairments under 20 C.F.R. §§ 404.1520a(c) and 416.920a(c):

> There are four broad "functional areas" listed in the regulations: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).[2] When evaluating a claimant using the "special technique," an ALJ must rate the degree to which the claimant is functionally limited in each of the four areas. *Id.* The ALJ must rate the degree of the claimant's limitation in the first three areas (activities of daily living; social functioning; and concentration, persistence, or pace) on a five-point scale. 20 C.F.R. § 404.1520a(c)(4). The five points on the scale are listed as: "none, mild, moderate, marked, and extreme." *Id.* The ALJ must rate the degree of the claimant's limitation in the fourth area, episodes of decompensation, on a scale with four points: "none, one or two, three, four or more." *Id.*

*Id.*

In the present case, the ALJ discussed Plaintiff's functional limitations in each of the four areas. [Tr. 21–22]. The ALJ found Plaintiff mildly limited with respect to daily living, citing support to Dr. Spangler's evaluation where Plaintiff indicated that he was able to drive locally about once a week, that he helped his wife cook and accompanied her to the grocery store, that he watched television, but that he had difficulty getting dressed and spends most of his day lying down. [Tr. 21]. The ALJ stated that "[t]he record shows that the claimant cares for his daily needs, takes his medication, attends doctors' appointments, and acts in his own interest." [*Id.*]. The ALJ also cited medical records from Cherokee Health System, the opinion of Dr. Spangler, as well as the opinion of Dr. Blaine, who performed a physical consultative examination of Plaintiff. [*Id.*].

---

[2] The Court noted that the regulations found in 20 C.F.R. §§ 404.1520a and 416.920a are parallel and substantively identical.

Further, the ALJ considered Plaintiff's testimony when evaluating Plaintiff's social functioning. [*Id.*].

Next, the ALJ assessed Plaintiff's concentration, persistence, and pace, finding that Plaintiff has moderate difficulties. [Tr. 22]. Relying on similar evidence, the ALJ referenced Plaintiff's testimony, as well as Dr. Spangler's opinion, to find that "there is no evidence of cognitive decline," Plaintiff is able to read or write, but not "big words," and that Plaintiff understood instructions and demonstrated good concentration, as well as detailed Plaintiff's responses to the tests set forth in Dr. Spangler's examination. [*Id.*]. Finally, the ALJ found a lack of evidence suggesting episodes of decompensation of extended duration. [*Id.*].

The sole fact that the ALJ failed to have further examinations and expert testimony regarding Plaintiff's impairments does not constitute failure to follow the Appeals Council's remand order, as the Appeals Council instructed the ALJ to obtain such additional evidence regarding Plaintiff's impairments *only if the ALJ deemed it necessary*. [Tr. 117]. By specifically addressing Plaintiff's functional limitations, and by making specific findings regarding Plaintiff's mental impairments under 20 C.F.R. 404.1520a and 416.920a, the ALJ "met the directives" of the Appeals Council's order. *Kearney v. Colvin*, 14 F. Supp. 3d 943, 950 (S.D. Ohio 2014). Therefore, the ALJ followed the Appeals Council's instructions on remand, and Plaintiff's argument raises no basis for remand in this case.

### C.     Plaintiff's Use of a Cane

Plaintiff claims that the ALJ failed to properly evaluate his claim pursuant to Social Security Ruling 96-9p, as Plaintiff alleges that his use of a cane should have been considered in determining his RFC and in the hypothetical question presented to the VE. [Doc. 17 p. 12]. However, the Court finds that the ALJ did not err in failing to incorporate the need for a cane into

Plaintiff's RFC. [Tr. 26–28].

Social Security Ruling 96-9p provides the operative law on this point:

> **Medically required hand-held assistive device**: To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information). The adjudicator must always consider the particular facts of a case.

1996 WL 374185, at *7 (July 2, 1996). The Sixth Circuit has explained that unless a cane is a necessary device, it will not be considered an exertional limitation that reduces a claimant's ability to work. *Carreon v. Massanari*, 51 F. App'x 571, 575 (6th Cir. 2002). "A cane would be medically necessary if the record reflects more than just a subjective desire on the part of the plaintiff as to the use of a cane." *Murphy v. Astrue*, No. 2:11-CV-00114, 2013 WL 829316, at *10 (M.D. Tenn. Mar. 6, 2013), *adopted sub nom.*, *Murphy v. Colvin*, No. 2:11-CV-00114, 2013 WL 4501416 (M.D. Tenn. Aug. 22, 2013) (citing *Penn v. Astrue*, 2010 WL 547491, at *6 (S.D. Ohio Feb. 12, 2010)).

Here, Plaintiff testified that he used a cane for stability. [Tr. 70]. As an initial matter, the Court notes that Plaintiff's testimony is insufficient to establish that his use of a cane was medically necessary. *See Mitchell v. Comm'r of Soc. Sec.*, No. 13-CV-01969, 2014 WL 3738270, at *12 (N.D. Ohio July 29, 2014) ("However, Mitchell's testimony does not qualify as 'medical documentation establishing the need' for the cane under SSR 96–9p.").

Plaintiff does not cite to medical records that establish that a cane was medically necessary; rather, Plaintiff claims that the ALJ's RFC decision is not supported by substantial evidence because the ALJ did not mention Social Security Ruling 96-9p. [Doc. 17 p. 12]. Plaintiff asserts

that Social Security Ruling 96-9p "provides that a residual functional capacity for less than a full range of sedentary work reflects very serious limitations . . . [and] a finding of 'disabled' usually applies when the full range of sedentary work is significantly eroded." [*Id.*]. However, Social Security Ruling 96-9p "also suggests that if there is a doubt as to whether a claimant's sedentary job base is significantly eroded, the ALJ can and should consult . . . a VE, to determine if there are a substantial number of jobs such a person can perform," which the ALJ did in the present case. *See Hale v. Colvin*, No. 2:15-cv-261, 2016 WL 7799600, at *7 (E.D. Tenn. Sept. 19, 2016) (rejecting argument that "the ALJ erred in his failure to mention or analyze the plaintiff's claim" by not mentioning Social Security Ruling 96-9p).

In the present case, the ALJ examined Plaintiff's severe medical impairments and medical record and did not incorporate the use of a cane into Plaintiff's RFC. [Tr. 23]. Although Plaintiff received treatment for chronic knee and back pain, the ALJ noted that during a consultative examination, Dr. Robert Blaine stated that Plaintiff displayed a normal gait and station, performed a normal tandem walk, and displayed a full range of motion in his knees. [Tr. 27]. Therefore, Dr. Blaine opined that Plaintiff could stand or walk for four hours out of an eight-hour day. [Tr. 23]. Further, the ALJ found that "[t]here is no objective evidence of radiculopathy, spinal stenosis, or disc herniation," and imaging of Plaintiff's left knee showed only mild arthritic thinning, with imaging of the right knee showed "tripartite non-acute patella reported as likely representing a normal variant." [Tr. 28]. The ALJ stated that Ms. Martin specifically noted that Plaintiff did not require the use of a cane to ambulate. [Tr. 27]. Lastly, the ALJ further discussed additional MRI's and x-rays of Plaintiff's knees, as well as Plaintiff's treatment records, and then excluded Plaintiff's allegations of needing a cane from the RFC and hypothetical questions presented to the VE. [Tr. 23, 27].

Ultimately, Plaintiff does not point to any instance of a physician prescribing a cane or stating that Plaintiff needed a cane. *Simpkins v. Berryhill*, No. CV 17-43-DLB, 2017 WL 3821684, at *3 (E.D. Ky. Aug. 31, 2017) (upholding RFC determination as "[t]he record does not contain any evidence that Plaintiff is *required* to use a cane"). The sole fact that the ALJ did not mention Social Security Ruling 96-9p in his RFC determination does not constitute error. *See Hale*, 2016 WL 7799600, at *7. In the absence of any explanation of why the cane was medically necessary, and given Plaintiff's treatment records, the ALJ's decision not to include that limitation in Plaintiff's RFC and in hypotheticals to the VE was supported by substantial evidence and proper under Social Security Ruling 96-9p. *See Bowen v. Berryhill*, No. 3:17-CV-17, 2018 WL 1229735, at *3 (S.D. Ohio Mar. 7, 2018); *see, e.g.*, *Forester v. Comm'r of Soc. Sec.*, No. 16–CV–1156, 2017 WL 4769006, at *4 (S.D. Ohio Oct. 23, 2017) ("Where there is conflicting evidence concerning the need for a cane, it is the ALJ's task, and not the Court's, to resolve conflicts in the evidence.") (citation and internal quotation marks omitted).

### D.     Plaintiff's Credibility

Lastly, Plaintiff contends that substantial evidence does not support the ALJ's RFC determination because the ALJ erred in assessing the credibility of Plaintiff's subjective allegations. [Doc. 17 p. 12–13]. Therefore, Plaintiff claims that his subjective allegations of "stress . . . both physical and mental [were] . . . amply supported by the medical evidence of record," and thus the ALJ "was in error for not finding [him] fully credible in view of this evidence." [*Id.* at 13].

In evaluating complaints of pain, an ALJ may properly consider the credibility of the claimant. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). "[D]iscounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical

reports, claimant's testimony, and other evidence." *Id.* The ALJ's finding regarding credibility "are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Id.* Nonetheless, the ALJ's "decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *2 (July 2, 1996).

Plaintiff completed a pain assessment on June 4, 2015, where he indicated that his average rate of pain was an eight on a ten-point scale, while his pain level without medication was a ten. [Tr. 629]. Further, Plaintiff designated that his pain remains controlled for one to two hours and that it severely limits his ability to perform daily activities. [*Id.*]. While Plaintiff claims that objective evidence supports his claims, Plaintiff fails to point to any evidence in the medical record. Additionally, the ALJ discussed Plaintiff's symptoms and treatment in detail, first stating that although Plaintiff claims right elbow pain, Plaintiff's last exam in July 2014 revealed intact range of motion. [Tr. 26]. The ALJ stated that "Plaintiff experiences bilateral knee pain and back pain," but then proceeded to detail that "[t]he objective evidence fails to document an impairment or combination of impairments which would be expected to result in severe or disabling pain." [Tr. 28].

The Court agrees with the Commissioner and finds that in discounting Plaintiff's credibility, the ALJ's cited reasons are supported by the record and provide a reasonable basis for finding Plaintiff's symptoms and pain less severe than alleged. The ALJ examined the medical record as a whole to detail how "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely credible." [Tr. 23]. Specifically, the ALJ

25

discussed Plaintiff's treatment for his knee and back, that Plaintiff has not required aggressive treatment for pain, has not been hospitalized due to pain, and no treating source indicated that Plaintiff is disabled due to his allegations of pain. [Tr. 28]. Further, the ALJ examined Plaintiff's subjective allegations of stress, including Plaintiff's allegations regarding the infidelity of his wife and depression. [Tr. 25]. The ALJ reviewed Plaintiff's mental health treatment, summarizing that "[o]n most occasions, the treatment record shows that the claimant has failed to even [mention] mental health symptoms." [Tr. 28].

Additionally, the Court notes that Plaintiff merely claims that his subjective allegations of pain and stress were supported by the record, and thus the ALJ erred in not finding him credible. [Doc. 17 p. 12–13]. However, Plaintiff fails to explain what records support his subjective claims of mental functional deficits, or what subjective allegations are at issue. *See Moore v. Comm'r of Soc. Sec.*, 573 F. App'x 540, 543 (6th Cir. 2014) ("Issues averted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.") (citing *United States v. Stewart*, 628 F.3d 246, 256 (6th Cir. 2010)). Therefore, the Court finds the ALJ's credibility determination supported by substantial evidence, and Plaintiff's arguments to the contrary are not well taken.

## VI.    CONCLUSION

Based on the foregoing, Plaintiff's Motion for Judgment on the Pleadings [**Doc. 16**] will be **DENIED** and the Commissioner's Motion for Summary Judgment [**Doc. 18**] will be **GRANTED**. The decision of the Commissioner will be **AFFIRMED**. The Clerk of Court will be **DIRECTED** to close this case.

ORDER ACCORDINGLY.

Debra C. Poplin
United States Magistrate Judge